# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION
## CIVIL ACTION NO. 5:13-CV-00223-TBR


BRYAN L. DRAKE, *et al.*                                                                Plaintiffs,

v.

UNITED STATES ENRICHMENT CORPORATION                                     Defendant.


## MEMORANDUM OPINION

This matter comes before the Court upon competing motions for summary judgment. Defendant United States Enrichment Corporation ("USEC" or "the Company") first filed a Motion for Summary Judgment. (Docket No. 24.) Plaintiff Bryan L. Drake and other USEC employees (collectively "Plaintiffs") have both responded and moved for summary judgment in their own favor. (Docket Nos. 25, 26.) USEC has responded to Plaintiffs' Motion, (Docket No. 28), and replied to Plaintiffs' response, (Docket No. 29). Plaintiffs have replied to USEC's response. (Docket No. 35.) Fully briefed, this matter is now ripe for adjudication. For the reasons explained below, the Court will GRANT USEC's Motion and will DENY Plaintiffs' Motion.


## Factual Background

This matter concerns the shutdown of the Gaseous Diffusion Plant in Paducah, Kentucky ("the Plant"). The United States Department of Energy ("DOE") owns the Plant and leases it to USEC. USEC operates the Plant, utilizing gaseous diffusion technology to enrich uranium for use in nuclear reactors. A relic of the Cold War, the Plant was the only active gaseous diffusion facility in the United States that remained functioning for commercial use as of the early 2000s.

USEC officials were aware that the Plant's enrichment activities would eventually come to an end; however, they anticipated that a series of agreements would extend Plant operations. USEC first

entered into a one-year agreement with the Tennessee Valley Authority and Energy Northwest to continue production through May 2013. USEC officials expected a similar agreement to extend production for another year. However, on May 23, 2013, senior corporate management informed Plant management that no such agreement was achieved. Therefore, the Plant would immediately begin a transition of property to DOE.

Production managers estimated that approximately 160 individuals would be laid off in August 2013, with gradual but steady layoffs to occur as production declined. USEC states that several factors complicated the process of determining precisely which employees would be laid off. First, DOE required certain portions of the Plant to be protected and maintained throughout the shutdown period, necessitating the retention of certain employees who might have otherwise been laid off. Moreover, the Plant's contract with the United Steelworkers International Union, Local 550 ("the Union") permitted senior employees to "bump" to another position under certain circumstances: that is, if a more senior Union employee was targeted for layoff but had previously worked in an unaffected job classification, the senior employee could "bump" into his previous position, displacing a junior employee who would instead be released. Finally, USEC offered employees the opportunity to voluntarily retire, giving them until July 2013 to so choose. USEC could not ascertain which employees would voluntarily retire until after this deadline passed.

Plaintiffs allege that USEC failed to properly notify of the impending layoffs pursuant to the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101-2109. Congress enacted the WARN Act to provide workers, their families, and their communities with advance notice of mass layoffs, allowing them to adjust to the potential loss of employment and to acquire other work or job training. 20 C.F.R. § 639.1(a) (1995). Should a mass layoff or plant closing occur, the Act requires certain employers to provide written notice to each affected employee at least sixty days before the layoff. 29 U.S.C.A. § 2102 (1990). Employers who fail to provide such notice are liable for back pay, lost benefits, civil penalties, and attorney fees. 29 U.S.C. § 2104 (1990).

On May 31, 2013, USEC distributed one WARN Act notice to hourly unionized employees and another to salaried employees. The first notice, issued to Union President Donna Steele, included two lists of the Plant's Union employees, the first organizing them by classification and the second by seniority. The notice stated that approximately 160 employees would be laid off between August 5, 2013, and August 19, 2013. (*See* Docket No. 24-4, WARN Act Notice to Union employees.) The second notice was sent to each of the Plant's salaried employees. (*See* Docket No. 24-5, WARN Act Notice to salaried employees.) On August 5, 2013, USEC issued individualized notice to each person who would be laid off on August 16, 2013. (*See* Docket No. 24-6, WARN Act Notice to hourly employees; Docket No. 24-7, WARN notice to salaried employees.)

Plaintiffs allege that the WARN Act notice provided by USEC was not sufficient and that they are entitled to damages. Plaintiffs allege that because they received only eleven days' notice of their termination, USEC is liable for forty-nine days of salary and benefits to each affected Plaintiff. USEC responds that its notice was legally sufficient, arguing that it was impossible to determine the specific employees that would ultimately be laid off.

**Legal Standard**

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of

his position; he must present evidence on which the trier of fact could reasonably find for him. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

### Analysis

Plaintiffs allege that USEC failed to deliver appropriate notice of the imminent layoffs. They contend that the notice issued on May 31, 2013, did not name the individuals who would be laid off, nor did it list specific job titles that would be affected. Instead, the notice simply listed all job titles and all USEC employees. USEC does not dispute that it is subject to the WARN Act requirements and that the August 2013 layoff required the statutory sixty-day notice. USEC would nonetheless have the Court conclude that its actions did not violate the WARN Act given the uncertainty confronting the Company. USEC contends that it provided the most accurate, timely, and specific information possible, but that determining exactly which employees would be laid off proved impossible sixty days in advance.

As an initial matter, the Court notes that Plaintiffs Gregory Mason, James Bone, Janet Bowman, and Michael Roberts ("the Salaried Plaintiffs") were salaried employees at the time of their separation from employment. USEC alleges that each of the Salaried Plaintiffs executed a severance agreement and general release ("the Release") by which they released the Company from all claims arising from or related to "separation from employment" in exchange for severance pay. The Release also applies to all known or unknown claims that may arise in the future. (*See* Docket No. 24-8, Severance Agreement and General Release signed by Mason; Docket No. 24-9, Release Signature Pages signed by Bone, Bowman, and Roberts.)

Plaintiffs fail to address or discuss this argument in their briefings. Given the lack of response, USESC claims that Plaintiffs have effectively abandoned and waived their claim as to these plaintiffs. *See Ctr. For Biological Divsersity v. Rural Utils. Serv.*, 2009 WL 3241607, at *3 (E.D. Ky. Oct. 2, 2009) ("When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived, and grant the motion.") (citing *Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008)). Accordingly, the Court finds that the aforementioned agreement bars the Salaried Plaintiffs' claims.

The Court next turns to the claims of the remaining Plaintiffs, who receive hourly wages and are represented by the Union. Plaintiffs claim that the content of the notice was insufficient under the WARN Act. Department of Labor regulations require employers to notify "affected employees"—that is, "employees who may reasonably be expected to experience an employment loss," including those "who will likely lose their job because of bumping rights or other factors, to the extent that such workers can be identified at the time notice is required to be given." 20 C.F.R. § 639.6(b). The regulations specify that "[t]he information provided in the notice shall be based on the best information available to the employer at the time the notice is served." 20 C.F.R. § 639.7(a)(4). WARN notice to unionized workers must contain:

> (1) The name and address of the employment site where the plant closing or mass layoff will occur, and the name and telephone number of a company official to contact for further information;
> (2) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;
> (3) The expected date of the first separation and the anticipated schedule for making separations;
> (4) The job titles of positions to be affected and the names of the workers currently holding affected jobs.

20 C.F.R. § 639.7(c).

USEC argues that the WARN Act notice issued to Union President Steele on May 31, 2013, adheres to these requirements. The letter states the name and address of the employment site, explains

5

that the anticipated layoffs will be permanent, and estimates that approximately 160 employees will be laid off between August 5, 2013, and August 19, 2013—more than sixty days from the date of the notice. (Docket No. 24-4 at 1.) As stated above, the notice included a list of all Union employees sorted by both their job titles and their seniority, allowing Union members to gauge the amount of "bumping" that may occur. USEC therefore argues that it satisfied the requirements of § 639.7(c)(4), which required it to provide the job titles that would be affected and the names of workers that held affected jobs.

The Court agrees with USEC that the act of notifying all employees of a mass layoff does not necessarily invalidate an otherwise sufficient WARN Act notice. Although Plaintiffs submit that the WARN notice should be considered from their perspective, precedent establishes the contrary: the *employer's* perspective controls who is an "affected employee" during an impending layoff. *See, e.g.*, *Snider v. Commercial Fin. Servs., Inc.*, 288 B.R. 890, 900 (N.D. Okla. 2002) ("[T]he statute and regulations define 'affected employee' from the employer's perspective in deciding who could reasonably 'be expected' to experience an employment loss, and not whether the employee expected to be laid off as a result of the notice."). Accordingly, regardless of whether Plaintiffs reasonably believed that they would not be laid off, this inquiry does not determine whether they received adequate Notice.[1]

The Court must instead consider the Notice's sufficiency from USEC's perspective. USEC had no way to ascertain precisely who would be laid off sixty days before the layoffs occurred, given the unresolved and often complex issues confronting management. Therefore, in an effort to comply with the regulation, USEC provided notice to all employees who might "reasonably be expected" to experience a

---

[1] Plaintiffs contend that they did not reasonably expect to be laid off during the first wave of layoffs. In Plaintiffs' telling, their odds of being laid off were slim: although the May 31, 2013, notice listed 531 total employees, it stated that only 50 to 160 jobs would be affected in early August. Plaintiffs calculate that this left each individual with as low as a 9% chance of being laid off—little basis, they say, to reasonably conclude that they would lose their jobs. (Docket No. 25 at 6.) However, Plaintiffs misunderstand the context of this statement: the fifty-employee language is not an estimate of affected USEC workers, but a reference to the statutory definition of a "plant closing" as a loss of more than fifty employees in a thirty-day period. *See* 29 U.S.C. § 2101(a)(2). The notice itself unambiguously states that approximately 160 employees would be laid off. Therefore, approximately 30% of the named were likely subject to layoff.

loss of employment. Plaintiffs correctly state that some workers were notified but not ultimately laid off. However, the spirit of the WARN Act favors giving too much notice rather than too little; simply put, it is better to alert all workers to the possibility of layoff than to blindside with a pink slip employees who trusted that their jobs were safe. *See Snider*, 288 B.R. at 900 ("[A]n over-notification is preferable to under-notification because an employee who is given notice but is not laid off is not harmed by the notice."). Neither the statute nor the regulations require an employer to list individual employees who will ultimately be laid off: Instead, the employer must only identify "[t]he job titles of positions to be affected and the names of the workers currently holding affected jobs." 20 C.F.R. § 639.7(c)(4). The WARN letter issued to Union President Steele satisfied this requirement: it listed all employees because it appeared at the time that all employees *could* be affected.

Although the regulations interpreting the WARN Act specify the information that must be included in a Notice, 20 C.F.R. § 639.7(d), they do not require that the notice *only* be given to employees who will be terminated. Rather, the regulations contemplate that the notice will be based on the "best information available to the employer at the time notice is served." 20 C.F.R. § 639.7(a)(4). Moreover, employers should identify those employees subject to bumping rights "to the extent that such individual workers reasonably can be identified at the time notice is required to be given." 20 C.F.R. § 639.3(e). These common-sense regulations acknowledge the limited information upon which employers must act in an uncertain economic landscape.

The Court finds support in *Snider v. Commercial Financial Services, Inc.*, 288 B.R. 890 (N.D. Okla. 2002). In *Snider*, the district court confirmed the validity of a WARN Act notice given to all employees when the company knew that only some would be affected by the initial layoff. The company planned to lay off a substantial part of its workforce but did not know which specific employees would be affected by the downsizing. The company therefore issued WARN Act notices to all employees, as all were potentially subject to layoff. The district court agreed with the bankruptcy court that sending the WARN notice to all employees did not invalidate it *per se*. *Snider* emphasized the WARN Act's goal of

affording employees with the best and earliest notice possible under the circumstances. 288 B.R. at 899 (citing 20 C.F.R. § 639.7(a)(4) (information provided in the notice shall be based on the best information available to the employer at the time notice is served)). The court concluded that the company reasonably believed that all employees should receive notice that their employment may be terminated.

Plaintiffs attempt to distinguish *Snider*, emphasizing that 1,800 of 3,000 workers in *Snider* were laid off, totaling 60% of those who received notice. Plaintiffs note that it was thus more likely than not that a *Snider* employee who received the WARN Act notice would be laid off—unlike here, where approximately 30% of employees were estimated to be affected. As stated above, the Court's analysis does not focus upon the reasonable expectations of the employees, but the good faith belief of the employer. The Court will not draw an arbitrary line between the *Snider* 60% and the USEC 30%, as the same reasoning guides each case.

USEC argues in the alternative that should the Court determine that USEC failed to comply with the WARN Act, it nonetheless acted in good faith. The WARN Act provides that if an employer demonstrates to the Court's satisfaction that its violation of the Act was in good faith and that the employer had reasonable grounds for believing its conduct was not a violation, the court may reduce the employer's liability or penalty. 29 U.S.C. §2104(a)(4). Having determined that USEC did not violate the Act, the Court need not undertake a lengthy analysis of this matter. However, the Court briefly notes that it does not appear that USEC deliberately avoided its WARN Act obligations. As noted above, USEC management avers that the Company had no way to identify the workers that would eventually be laid off in light of the uncertain nature of the transition period, the demands of DOE, and the Union employees' bumping rights. The Court perceives no bad faith in USEC's decision to notify all employees of the possibility of layoffs.

**Conclusion**

Although the Court sympathizes with Plaintiffs' loss of employment, the Court finds that USEC fulfilled its obligations under the WARN Act as a matter of law. Therefore, the Court will GRANT USEC's Motion for Summary Judgment, (Docket No. 24), and will DENY Plaintiffs' Motion for Summary Judgment, (Docket No. 26). An appropriate Judgment will issue concurrently with this Memorandum Opinion.